UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| K&M INTERNATIONAL, INC. | ) | CASE NO.: |
| 1955 Midway Drive | ) | |
| Twinsburg, Ohio 44087, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | **(Jury Demand Endorsed Hereon)** |
| NDY TOY, LLC | ) | |
| 6611 Duneden Avenue | ) | |
| Solon, Ohio 44139, | ) | |
| | ) | |
| WUJIANG DUOYI CRAFT CO., | ) | |
| LTD. | ) | |
| No. 2 South Lu Xiang Road | ) | |
| Wujiang City, Jiangsu, 2152 | ) | |
| China, | ) | |
| | ) | |
| DEBRA YAGER | ) | |
| 6178 Booth Road | ) | |
| Ravenna, Ohio 44266, and | ) | |
| | ) | |
| HELEN HE | ) | |
| 6611 Duneden Avenue | ) | |
| Solon, Ohio 44139, | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff K&M International, Inc. ("K&M" or the "Company"), as and for its

Complaint against Defendants NDY Toy, LLC ("NDY"), WuJiang DuoYi Craft Co., Ltd.

("Duoyi"), Debra Yager ("Ms. Yager"), and Helen He ("Ms. He") (collectively, the

"Defendants"), alleges as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1.    This case presents a conspiracy of Shakespearean proportions.  Two of

K&M's former senior employees have conspired with K&M's current Chinese

manufacturer to create a new company for the express purpose of competing with K&M in its core market segment. Defendants seek to sell the same toys, with the same or substantially similar designs, to K&M's customers at lower prices, to the substantial detriment of K&M. In so doing, Defendants have willfully and maliciously violated the Copyright Act; the Ohio Trade Secrets Act, Ohio Revised Code § 1333.61, *et seq*.; and the common law.

2. K&M is a leading designer of high-quality toys. Through its Wild Republic division, K&M distributes toys to retail toy stores and gift shops throughout the country and worldwide, with a particular emphasis on zoos, museums, and aquariums (the "ZMA Market").

3. Ms. Yager and Ms. He are former employees of K&M. Duoyi is a Chinese toy manufacturer which has manufactured and supplied plush toys to K&M for many years.

4. Upon information and belief, Ms. Yager, Ms. He, and Duoyi joined together on or about July 16, 2012 to form a new limited liability company in Ohio, NDY, which sought to enter into the plush toy market, and the ZMA Market in particular, a market long dominated by K&M, and engage in the sale of plush toys in direct competition with K&M. Either unable or unwilling to compete against K&M fairly and on a level playing field, NDY has instead taken a more expeditious approach—resorting to a series of unfair business practices, including, but not limited to, the serial imitation and copycatting of K&M's plush toy designs and the use of trade secrets and other confidential proprietary business information obtained by Ms. Yager and Ms. He during their employment with K&M, and by Duoyi in the course of its long-standing business relationship with K&M.

5.    Upon information and belief, Defendants are actively soliciting business from K&M's existing and potential customers in the ZMA Market, and the wider plush toy market, in an effort to sell toys that infringe upon K&M's intellectual property rights. Defendants have also engaged in business practices that misappropriate K&M's trade secrets and confidential business information, and breached their contractual and common law duties to K&M.

6.    Defendants' conduct cannot be explained by sheer coincidence, nor is it merely fair competition.  Rather, it is a calculated and intentional effort unquestionably designed to trade off of K&M's innovation, hard work and goodwill, and to divert profits away from K&M.  K&M brings this action to halt Defendants' unfair tactics and to recover monetary damages for the extensive harm that Defendants' illicit behavior has caused, and continues to cause, K&M.  K&M seeks injunctive relief and damages as a result of Defendants': (a) copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*.; (b) misappropriation of K&M's trade secrets under the Ohio Trade Secrets Act, Ohio Revised Code § 1333.61, *et seq*.; (c) breach of contracts; (d) tortious interferences with K&M's contractual and business relations; (e) fraud; (f) unfair competition; (g) breach of implied covenants of good faith and fair dealing; and (h) unjust enrichment.

7.    The harm suffered by K&M as a result of Defendants' misconduct is irreparable, and Defendants' wrongful activities will continue unless enjoined by the Court.

## PARTIES

8.     K&M is a corporation organized and existing under the laws of the State of Ohio, having an address and principal place of business at 1955 Midway Drive, Twinsburg, Ohio 44087.

9.     Upon information and belief, NDY is an Ohio limited liability company having an address and principal place of business at 6611 Duneden Avenue, Solon, Ohio 44139.

10.    Upon information and belief, Duoyi is a Chinese company with an address of No. 2 South Lu Xiang Road, Wujiang City, Jiangsu, 2152, China.

11.    Upon information and belief, Ms. Yager and Ms. He are residents of the State of Ohio.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.  This Court has supplemental jurisdiction over the state law and common law claims under 28 U.S.C. § 1338(b), and 28 U.S.C. § 1367(a), as they form part of the same case or controversy and derive from a common nucleus of operative facts, and do not substantially predominate over the claims over which this Court has original jurisdiction.

13.    This Court has personal jurisdiction over Ms. Yager, Ms. He, and NDY by virtue of the fact that they reside in Ohio.  This Court has personal jurisdiction over Duoyi pursuant to Ohio Revised Code § 2307.382 by virtue of the fact that, upon information and belief, Duoyi: (1) regularly does or solicits business in the State of Ohio through, at least, its contractual relationship with K&M; and (2) has committed tortious

4

injury against K&M, an Ohio corporation, in this state—namely engaging in the acts of copyright infringement and unfair competition as complained of herein.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400.  Defendants are entities and individuals subject to personal jurisdiction in this District and a substantial part of the acts and omissions giving rise to the claims set forth below occurred in the District.  In addition, the injury to K&M was suffered in this District.

**FACTS COMMON TO ALL COUNTS**

**I.      K&M's Valuable Intellectual Property Rights**

15.     K&M designs popular plush, polyvinyl chloride, and other toy products depicting a wide variety of wild animals, dinosaurs, and other fanciful creatures.  K&M distributes these products to retail toy stores and gift shops across the United States and worldwide through its Wild Republic division.  A copy of the 2013 catalogue for Wild Republic is attached hereto at Exhibit A.  K&M's toy products are distributed for retail sale in all channels of trade where toys are sold, yet the core of K&M's business is the ZMA Market.  The Company also maintains a popular web site, located at www.WildRepublic.com, which serves as a major promotional and sales vehicle for K&M's toy products.

16.     K&M is the exclusive owner in the United States of copyrights in the designs of many of its animal plush toy products.  Each toy design has a unique and distinctive style and distinctive characteristics.  The toys are K&M's original creative works, and K&M owns valuable copyright rights related thereto.  K&M is the record owner of the copyright registration related to the toy products, which creates a legal

presumption in favor of K&M with respect to the ownership of and the validity of the copyrights in these works.  A true and correct copy of the certificate of registration and related deposits for the plush toy designs is attached hereto at Exhibit B, and is incorporated herein by reference.

17.     K&M also owns valuable confidential information and trade secrets consisting of, without limitation, books and records related to the operation, products, finances, accounting practices, sales, personnel, and management of K&M, formulas, processes, manufacturing techniques, customer information (including customer lists, prospect lists, call reports, and customers' names, addresses, and purchasing histories), confidential computer software, confidential codes, equipment specifications, specialized equipment and its operation, sales and marketing techniques, product information, and research and development information (hereinafter, collectively referred to as "Trade Secrets and Confidential Information").  K&M has taken reasonable protective efforts to maintain the secrecy of its Trade Secrets and Confidential Information, including, but not limited to, requiring its employees and suppliers to enter into confidentiality and non-disclosure agreements.

## II.     Ms. Yager and Ms. He's Employment and Access to K&M's Trade Secrets and Confidential Information

18.     K&M hired Ms. Yager as an Account Executive on or around February 27, 1997.

19.     As an Account Executive, Ms. Yager was responsible for generating sales for K&M in the ZMA Market.  Ms. Yager had frequent and direct contact with many significant customers, and was privy to valuable confidential information and trade secrets about those customers, including their names, contact information, and purchasing

histories.

20.    K&M hired Ms. He on or around July 14, 2006.  Ms. He held various positions within the Company, and at one point relocated to China to manage K&M's Chinese office.  Most recently, however, Ms. He was a Plush Toy Designer in the Twinsburg office.

21.    As a plush toy designer, Ms He managed key design projects, and had access to valuable confidential information about K&M's plush toy products, including research and development information.

22.    In an effort to maintain the secrecy of its Trade Secrets and Confidential Information, K&M required that Ms. Yager and Ms. He sign various confidentiality and non-disclosure agreements.

23.    On or about May 4, 1998, as a condition of her employment with K&M, Ms. Yager executed the Agreement Governing Intellectual Property and Confidential Information, attached hereto as Exhibit C.  In Paragraph 2 of the Agreement Governing Intellectual Property and Confidential Information, Ms. Yager agreed that, "[d]uring the term of [the] Agreement and thereafter," she would not "use, disclose or publish any Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, except as necessary for the performance of [her] duties for and on behalf of the Company."

24.    On or about August 13, 2008, as a condition of her continued employment with K&M, Ms. Yager executed the Non-Competition, Proprietary Information, and Confidentiality Agreement, attached hereto as Exhibit D.

25.    In Paragraph 2 of the Non-Competition, Proprietary Information, and

Confidentiality Agreement, Ms. Yager acknowledged that K&M "is the owner of valuable trade secrets, business knowledge, and other confidential information," and agreed to hold as secret and confidential, and not disseminate or make use of, during her employment with K&M, *and all times thereafter*, any and "all knowledge, technical information, financial information, business information, developments, trade secrets, inventions, know-how, and confidences of the Company or its business" which she acquired "before, during, or after [her] employment with the Company," to the extent such matters had not previously been made public or are not thereafter made public. [emphasis added].

26.     In Paragraph 2 of the Non-Competition, Proprietary Information, and Confidentiality Agreement, Ms. Yager acknowledged that K&M's Trade Secrets and Confidential Information gives K&M a competitive advantage over its competitors who do not have access to such information.

27.     On or about February 7, 2001, January 2, 2002, and January 22, 2004, as a condition of her continued employment with K&M, Ms. Yager executed the Employee Confidentiality Agreements, attached hereto as Exhibit E.  By signing the Employee Confidentiality Agreements, Ms. Yager agreed that, "during [her] employment by K&M *and after termination thereof*," she would not, directly or indirectly, "disseminate or make use of any of the confidential business and industry information of K&M or its customers and/or suppliers in any manner contrary to the interests of K&M or its customers and/or suppliers, regardless of how that information was acquired."  [emphasis added].

8

28.     Ms. Yager resigned from her employment at K&M on or about October 30, 2010.

29.     Soon after her resignation, Ms. Yager unreasonably argued with K&M that she should not be subject to the Non-Competition, Proprietary Information, and Confidentiality Agreement—and demanded that K&M release her from the agreement so that she could compete directly against K&M as an employee of a direct competitor of K&M.

30.     On June 19, 2006, as a condition of her employment with K&M, Ms. He signed an Employee Confidentiality Agreement, attached hereto as Exhibit F.  This Employee Confidentiality Agreement contains the same restrictive covenants as those Ms. Yager signed.

31.     On July 14, 2006, as a condition of her continued employment with K&M, Ms. He signed a Non-Competition, Proprietary Information, and Confidentiality Agreement, attached hereto as Exhibit G.   This Non-Competition, Proprietary Information, and Confidentiality Agreement contains the same restrictive covenants as the one Ms. Yager signed.

32.     Ms. He resigned from her employment at K&M on or around July 15, 2011.

III.    **Duoyi's Ongoing Business Relationship with K&M**

33.     Duoyi has manufactured and supplied plush toys to K&M since October 2007.

34.     On September 25, 2011, Duoyi, by its President, Du XiaoFeng, entered into a written agreement with K&M (the "Business Commitment Letter"), attached hereto as Exhibit H.

35.     In the Business Commitment Letter, Duoyi agreed that, "[while] manufacturing products for K&M it [would] not, either directly or indirectly, disclose Confidential Information to third parties most importantly **Ex-Employees of K&M**," or "manufacture products, do business of any nature[,] or work with **Ex-Employees** of K&M." Duoyi also agreed not to "discuss or show K&M's design, strategy, business information or other confidential information about K&M to **Ex-Employees** of K&M or **Competitors** of K&M." [emphasis in original].

36.     To date, Duoyi continues to manufacture and supply plush toys for K&M.

**IV.     Ms. Yager, Ms. He, and Duoyi's Breach of Legal Obligations Owed to K&M**

37.     After her employment ended, Ms. Yager self-servingly and without justification requested that the Company release her from her obligations under the Yager Agreements.

38.     K&M refused to disregard the Yager Agreements, and instead reminded Ms. Yager of the continuing duties and obligations she owed K&M under the Yager Agreements.

39.     Upon information and belief, on or about July 16, 2012, Ms. Yager, Ms. He, and Duoyi entered into a business relationship together to form the limited liability company, NDY, for the purpose of directly competing with K&M in the plush toy industry.

40.     Upon information and belief, Ms. Yager and Ms. He are the principal owners of NDY.

41.     Upon information and belief, NDY, and its owners and operators, have knowledge of the contractual duties owed to K&M by Ms. Yager, Ms. He, and Duoyi.

42.     Upon information and belief, Ms. Yager, Ms. He, and Duoyi remain in possession of K&M's Trade Secrets and Confidential Information, and, as employees and/or owners of NDY, have utilized such information in the course of establishing their new business.  Specifically, Defendants have used K&M's copyrighted plush toy designs to manufacture plush toys which are virtually identical to K&M's plush toys, and have marketed and sold them on NDY's website, located at www.ndytoy.com.

43.     During her employment with K&M, Ms. He became intimately knowledgeable of K&M's plush toy designs.  Now, upon information and belief, Ms. He has used such information to develop, market, and sell virtually identical plush toys for NDY.

44.     Further, upon information and belief, Defendants have used K&M's Trade Secrets and Confidential Information to solicit business from K&M's existing and potential customers in the ZMA Market, as well as those customers in the wider plush toy market, in an effort to sell toys that are virtually identical to K&M's copyrighted plush toys.

45.     During her employment with K&M, Ms. Yager became intimately knowledgeable of the ZMA Market and K&M's Trade Secrets and Confidential Information.  Now, upon information and belief, Ms. Yager has used such information to gain a foothold for her new company, NDY, in the ZMA Market—in direct contravention

of the non-disclosure agreements she signed and executed with K&M.

46.     NDY's business model is all too clear—employ K&M's former Account Executive and Plush Toy Designer, engage K&M's plush toy manufacturer, utilize K&M's Trade Secrets and Confidential Information, copy K&M's plush toy line—and then offer those same products to K&M's customers at a lower price, all while diverting profits from K&M and obtaining an unfair competitive advantage.  Defendants' actions are the essence of unfair competition.

47.     On January 25, 2013, counsel for K&M sent a letter to Ms. Yager and Ms. He, instructing them to cease and desist their various violations of their agreements with K&M (the "Cease and Desist Letter").  A copy of the Cease and Desist Letter is attached hereto as Exhibit I.

48.     The Cease and Desist Letter also advised Ms. Yager and Ms. He that K&M believed that they were misappropriating K&M's Trade Secrets and Confidential Information to benefit NDY, and that the plush toys NDY was manufacturing and selling infringed on K&M's copyrights.

49.     Upon information and belief, despite the Cease and Desist Letter, Ms. Yager, Ms. He, and Duoyi willfully continue to breach their contractual and common law duties to K&M by disclosing and/or using K&M's Trade Secrets and Confidential Information to compete with K&M.

50.     The unlawful conduct of Ms. Yager, Ms. He, and Duoyi was willfully done with knowledge of and/or reckless disregard for K&M's Trade Secrets and Confidential Information, and their contractual and common law duties to not disclose or make use of, K&M's Trade Secrets and Confidential Information—and for the express

purpose of damaging K&M's business and profiting from their use of K&M's Trade Secrets and Confidential Information.

**V.     Defendants Infringe on K&M's Valuable Copyrighted Works**

51.     Upon information and belief, despite being put on notice by K&M of the infringing nature of their plush toys, Defendants willfully continue to manufacture, market, distribute, sell, and offer to sell plush toys that infringe upon K&M's valuable copyrights.

52.     The infringing conduct of Defendants was and is willfully done with knowledge of, and/or reckless disregard for, K&M's rights in its copyrighted works, and for the express purpose of damaging K&M's business and profiting from the unauthorized manufacture, use, and sale of products infringing upon K&M's copyrights.

53.     K&M has complied in all respects with Title 17 of the United States Code, secured the exclusive rights and privileges to the plush toy designs as well as obtained the appropriate certificate of copyright registration, which constitutes *prima facie* evidence of the validity of the copyright and the facts stated in the certificate.

54.     After the date of registration of K&M's plush toy designs, and continuing to date, Defendants have infringed, and continue to infringe, on the copyrights in the K&M's plush toy designs.

**VI.    Defendants' Unlawful Actions Cause K&M Immediate and Irreparable Harm**

55.     As a result of Defendants' actions described herein, K&M has suffered actual financial loss, including, but not limited to, the loss of the substantial amounts of time, effort, and money expended to develop its business and business records, toy designs, trade secrets, and other confidential proprietary business information.  The

extent to which K&M has suffered financially is difficult to fully ascertain and quantify at this time.

56.     By engaging in intentional infringements of K&M's copyrighted toy designs, misappropriations of K&M's Trade Secrets and Confidential Information, and interferences with K&M's contractual relationships, Defendants have demonstrated: (1) a conscious disregard for the rights of K&M, in that Defendants planned their actions; (2) that the probable results of Defendants' actions would harm K&M's business and property rights; (3) the rights of K&M so established by contracts were quite obvious to those in Defendants' positions; and (4) Defendants' actions flout K&M's property and business rights. Thus, these actions have a great probability of causing irreparable harm to K&M's business.

57.     Further, K&M has no adequate remedy at law. Defendants' conducts as described above has caused and, if not enjoined, will continue to cause irreparable harm to K&M.

58.     Finally, pursuant to the agreements Ms. Yager and Ms. He entered into with K&M, K&M is entitled to injunctive relief in addition to any other rights and remedies available, as well as reasonable attorneys' fees and costs incurred in enforcing the covenants breached by Ms. Yager and Ms. He.

### First Cause of Action
### COPYRIGHT INFRINGEMENT
### (against all Defendants)

59.     K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 58 as though fully set forth herein.

60.     At all times herein, K&M has been and is still the owner and proprietor of all right, title and interest in and to the works depicted in the copyright registration, which is attached hereto as Exhibit B.  These works were original works of authorship and constitute copyrightable subject matter under the copyright laws of the United States.

61.     By its actions alleged above and with full knowledge of K&M's rights herein, Defendants have willfully infringed and continue to infringe K&M's original copyrighted toy designs by copying K&M's plush toy designs, manufacturing virtually identical plush toys, and offering the infringing products for sale in the United States, without K&M's permission.

62.     Defendants' acts as aforesaid violate K&M's exclusive rights under the Copyright Act of 1976 and constitute infringement of its copyrights.  As a result, K&M is entitled to an injunction restraining Defendants and their agents, employees and affiliated entities, from engaging in any further acts in violation of the Copyright Act, and damages in an amount to be established according to proof at trial.

**Second Cause of Action**
**MISAPPROPRIATION OF TRADE SECRETS**
**(against all Defendants)**

63.     K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 62 as though fully set forth herein.

64.     Ohio Revised Code § 1333.61, *et seq*. prohibits the conversion or misappropriation of trade secrets.

65.     Ohio Revised Code § 1333.61(D) sets forth the definition of "trade secret" as follows:

15

[I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1)   It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2)   It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

66.   K&M's Trade Secrets and Confidential Information constitutes a trade secret under Ohio Revised Code § 1333.61(D) because they have economic value from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from disclosure or use of such Trade Secrets and Confidential Information.

67.   K&M's Trade Secrets and Confidential Information are the subject of efforts that are reasonable under the circumstances to maintain their secrecy, including, but not limited to, requiring K&M employees and suppliers given access to such information—including Ms. Yager, Ms. He, and Duoyi—to enter into confidentiality and non-disclosure agreements.

68.   K&M's Trade Secrets and Confidential Information are not known outside the Company.

16

69.     K&M's Trade Secrets and Confidential Information are very valuable and have made K&M a world-wide leader in the plush toy industry and the ZMA Market in particular.

70.     K&M's Trade Secrets and Confidential Information are the result of experience gained over many years.  They could not be reproduced without substantial time and effort.

71.     Ms. Yager and Ms. He were familiar with and given access to K&M's Trade Secrets and Confidential Information through the performance of their job duties with the Company.

72.     Upon information and belief, Ms. Yager and Ms. He have misappropriated K&M's Trade Secrets and Confidential Information by furnishing, using, and/or disclosing the Trade Secrets and Confidential Information to Duoyi and NDY without the consent of K&M.

73.     Duoyi also had access to K&M's Trade Secrets and Confidential Information by virtue of its long-standing business relationship with K&M.

74.     Upon information and belief, Duoyi has misappropriated K&M's Trade Secrets and Confidential Business Information by furnishing, using, and/or disclosing the Trade Secrets and Confidential Information to Ms. Yager and Ms. He, former employees of K&M, and NDY, a competitor of K&M, without the consent of K&M.

75.     Upon information and belief, NDY misappropriated K&M's Trade Secrets and Confidential Information by: (a) acquiring the Trade Secrets and Confidential Information from Ms. Yager, Ms. He, persons who NDY knew or should have known were under a duty to maintain the secrecy and limit the use of the Trade Secrets and

17

Confidential Information, and from Duoyi, which NDY knew or should have known was under a duty not to disclose such confidential information to competitors or former employees of K&M; and (b) using K&M's Trade Secrets and Confidential Information in developing NDY in an effort to compete unfairly with K&M, when NDY knew or should have known that Ms. Yager and Ms. He were under a duty to maintain the secrecy and limit the use of K&M's Trade Secrets and Confidential Information, and that Duoyi was under a duty not to disclose such information to Ms. Yager or Ms. He, former employees of K&M, or NDY, a direct competitor of K&M.

76.     K&M has suffered and, if Defendants are not enjoined from further misappropriation, use, and disclosure, will continue to suffer, an ascertainable loss of money as well as immediate irreparable harm.  Accordingly, K&M is entitled to injunctive relief and damages, including both is actual losses and any unjust enrichment, pursuant to Ohio Revised Code §§ 1333.62 and 1333.63.

77.     K&M is entitled to punitive damages up to three times its damages and attorneys' fees as Defendants' misappropriation was willful and malicious.  Ohio Rev. Code  §§ 1333.63(B) and 1333.64(C).

### Third Cause of Action
### BREACH OF CONTRACT AND INJUNCTIVE RELIEF
#### (against Defendant Ms. Yager)

78.     K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 77 as though fully set forth herein.

79.     The Agreement Governing Intellectual Property and Confidential Information; Non-Competition, Proprietary Information and Confidentiality Agreement;

and Employee Confidentiality Agreement (hereinafter the "Yager Agreements") are valid, enforceable contracts.

80.     The Yager Agreements expressly prohibit Ms. Yager from disclosing or making use of the confidential business and industry information of K&M, its customers, and/or its suppliers to anyone for any reason, either during her employment with the Company or anytime thereafter.

81.     Upon information and belief, Ms. Yager has breached the Yager Agreements by, *inter alia*:

(a)     Disclosing and using K&M's Trade Secrets and Confidential Information in connection with the development of her business, NDY; and

(b)     Using business and industry information of K&M's customers and/or suppliers in a manner contrary to the interests of K&M and its customers and/or suppliers.

82.     These actions, individually and collectively, constitute a material breach of the Yager Agreements.

83.     That Ms. Yager contacted K&M in an attempt to circumvent the Yager Agreements further evidences her knowledge of the duties and obligations she owed K&M under the Yager Agreements, and her deliberate and calculated disregard thereof.

84.     K&M has successfully performed its duties and obligations under the Yager Agreements.

5534202.1

85.     K&M will be irreparably and immediately harmed by Ms. Yager if she continues to breach the express terms of the Yager Agreements to benefit her new company, NDY.

86.     The potential injury that may be suffered by Ms. Yager if injunctive relief is granted will not outweigh the injury suffered by K&M if injunctive relief is not granted.

87.     The public interest will be served by the granting of injunctive relief.

88.     K&M has no adequate remedy at law.

89.     K&M is entitled to immediate injunctive relief, including a preliminary and permanent injunction.

90.     As result of Ms. Yager's material breaches of the Yager Agreements, K&M has also suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

## Fourth Cause of Action
## BREACH OF CONTRACT AND INJUNCTIVE RELIEF
### (against Defendant Ms. He)

91.     K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 90 as though fully set forth herein.

92.     The Employee Confidentiality Agreement; and Non-Competition, Proprietary Information and Confidentiality Agreement (hereinafter, the "He Agreements") are valid, enforceable contracts.

93.     The He Agreements expressly prohibit Ms. He from disclosing or making use of the confidential business and industry information of K&M, its customers, and/or

its suppliers to anyone for any reason, either during her employment with the Company or anytime thereafter.

94.     Upon information and belief, Ms. He has materially breached the He Agreement by, *inter alia*:

        (a)     Disclosing and using K&M's Trade Secrets and Confidential Information in connection with the development of her company, NDY; and

        (b)     Using business and industry information of K&M's customers and/or suppliers in a manner contrary to the interests of K&M and its customers and/or suppliers.

95.     These actions, individually and collectively, constitute a material breach of the He Agreements.

96.     K&M has successfully performed its duties and obligations under the He Agreements.

97.     K&M will be irreparably and immediately harmed by Ms. He if she continues to breach the express terms of the He Agreements to benefit her new company, NDY.

98.     The potential injury that may be suffered by Ms. He if injunctive relief is granted will not outweigh the injury suffered by K&M if injunctive relief is not granted.

99.     The public interest will be served by the granting of injunctive relief.

100.     K&M has no adequate remedy at law.

101.     K&M is entitled to immediate injunctive relief, including a preliminary and permanent injunction.

21

5534202.1

102.    As result of Ms. He's material breaches of the He Agreements, K&M has also suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

**Fifth Cause of Action**
**BREACH OF CONTRACT AND INJUNCTIVE RELIEF**
**(against Defendant Duoyi)**

103.    K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 102 as though fully set forth herein.

104.    The Business Commitment Letter, Exhibit G, is a valid, enforceable contract.

105.    The Business Commitment Letter expressly prohibits Duoyi from: (a) disclosing confidential information to third parties—specifically, former employees of K&M; (b) manufacturing products for, or working in any manner with, former K&M employees; and (c) discussing or showing K&M's design strategy, business information, or other confidential information to former employees of K&M or competitors of K&M while manufacturing products for K&M.

106.    Upon information and belief, Duoyi has materially breached the Business Commitment Letter by, *inter alia*:

(a)    Disclosing K&M's confidential business information to third parties, including Ms. Yager, Ms. He, and NDY;

(b)    Manufacturing products for Ms. Yager and Ms. He, both former employees of K&M, on behalf of NDY;  and

(c)    Sharing K&M's design, strategy, and business information with Ms. Yager, Ms. He, and NDY for the express purpose of

22

competing with K&M—all while manufacturing products for K&M.

107.    K&M has successfully performed its duties and obligations under the Business Commitment Letter by placing orders and making payments for plush toys with Duoyi on a consistent basis and in good faith.

108.    K&M will be irreparably and immediately harmed by Duoyi if it continues to breach the express terms of the Business Commitment Letter to benefit Ms. Yager, Ms. He, and NDY.

109.    The potential injury that may be suffered by Duoyi if injunctive relief is granted will not outweigh the injury suffered by K&M if injunctive relief is not granted.

110.    The public interest will be served by the granting of injunctive relief.

111.    K&M has no adequate remedy at law.

112.    K&M is entitled to immediate injunctive relief, including a preliminary and permanent injunction.

113.    As result of Duoyi's material breaches of the Business Commitment Letter, K&M has also suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

### Sixth Cause of Action
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
#### (against Defendant NDY as to Ms. Yager)

114.    K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 113 as though fully set forth herein.

5534202.1

115.    Ms. Yager and K&M are contractual parties to the Yager Agreements. Many of the duties Ms. Yager owes under the Yager Agreements continue beyond the termination of her employment with K&M.

116.    Upon information and belief, Ms. Yager began her employment relationship with NDY in July 2012.

117.    Upon information and belief, NDY knew about the contractual relationship between Ms. Yager and K&M at the time it hired Ms. Yager.

118.    NDY has an obligation to refrain from engaging in unfair competition and to avoid interfering with the Yager Agreements.

119.    Upon information and belief, NDY intentionally, improperly, and without privilege or justification, interfered with K&M's contractual relationship with Ms. Yager.

120.    Upon information and belief, NDY intentionally, improperly, and without privilege or justification procured Ms. Yager's breaches of the Yager Agreements by employing Ms. Yager, and inducing her to disclose and use K&M's Trade Secrets and Confidential Information.

121.    Upon information and belief, NDY intentionally, improperly, and without justification procured Ms. Yager's breach of the Yager Agreements with the motivation and intent of pillaging K&M's Trade Secrets and Confidential Information to gain an unfair advantage in the marketplace–specifically, by using Ms. Yager's knowledge of K&M's Trade Secrets and Confidential Information to develop and sell plush toys in direct competition with K&M.

122.    As a direct consequence of NDY's tortious interference with the contractual relationship between Ms. Yager and K&M, Ms. Yager has wrongfully used

K&M's Trade Secrets and Confidential Information, solicited business, and consummated sales of NDY products to several K&M customers.

123.    As an actual, direct, and proximate result of NDY's tortious interference with the contractual relationship between Ms. Yager and K&M, K&M has been harmed by the loss of numerous key customers, the significant diminution of the value of its business, and lost profits—the extent of which is difficult to fully ascertain and quantify at this time.  Consequently, K&M is entitled to monetary damages in an amount to be proven at trial.

124.    K&M is also entitled to punitive damages and attorneys' fees and costs as a result of NDY's intentional misconduct.

**Seventh Cause of Action**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(against Defendant NDY as to Ms. He)**

125.    K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 124 as though fully set forth herein.

126.    Ms. He and K&M are contractual parties to the He Agreements.  Many of the duties Ms. He owes under the He Agreements continue beyond the termination of her employment with K&M.

127.    Upon information and belief, Ms. He began her employment with NDY in July 2012.

128.    Upon information and belief, NDY knew about the contractual relationship between Ms. He and K&M at the time it hired Ms. He.

129.    NDY has an obligation to refrain from engaging in unfair competition and to avoid interfering with the He Agreements.

130.     Upon information and belief, NDY intentionally, improperly, and without privilege or justification, interfered with K&M's contractual relationship with Ms. He.

131.     Upon information and belief, NDY intentionally, improperly, and without privilege or justification procured Ms. He's breaches of the He Agreements by employing Ms. He, and inducing her to disclose and make use of K&M's Trade Secrets and Confidential Information.

132.     Upon information and belief, NDY intentionally, improperly, and without justification procured Ms. He's breach of the He Agreements with the motivation and intent of pillaging K&M's Trade Secrets and Confidential Information to gain an unfair advantage in the marketplace–specifically, by using Ms. He's knowledge of K&M's Trade Secrets and Confidential Information to develop and sell plush toys in direct competition with K&M.

133.     As a direct consequence of NDY's tortious interference with the contractual relationship between Ms. He and K&M, Ms. He has used K&M's Trade Secrets and Confidential Information, solicited business, and consummated sales of NDY products to several K&M customers.

134.     As an actual, direct, and proximate result of NDY's tortious interference with the contractual relationship between Ms. He and K&M, K&M has been harmed by the loss of numerous key customers, the significant diminution of the value of its business, and lost profits—the extent of which is difficult to fully ascertain and quantify at this time.  Consequently, K&M is entitled to monetary damages in an amount to be proven at trial.

135.    K&M is also entitled to punitive damages and attorneys' fees and costs as a result of NDY's intentional misconduct.

### Eighth Cause of Action
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
#### (against Defendants NDY, Ms. Yager, Ms. He as to Duoyi)

136.    K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 135 as though fully set forth herein.

137.    Duoyi and K&M are contractual parties to the Business Commitment Letter.

138.    Upon information and belief, NDY, Ms. Yager, and Ms. He knew about the contractual relationship between Duoyi and K&M prior to soliciting and engaging Duoyi as manufacturer and supplier for NDY.

139.    NDY, Ms. Yager, and Ms. He have an obligation to refrain from engaging in unfair competition, and to avoid interfering with the Business Commitment Letter.

140.    Upon information and belief, NDY, Ms. Yager, and Ms. He intentionally, improperly, and without privilege or justification, interfered with K&M's contractual relationship with Duoyi by soliciting and engaging Duoyi as manufacturer and supplier of NDY.

141.    Upon information and belief, NDY, Ms. Yager, and Ms. He intentionally, improperly, and without justification procured Duoyi's breach of the Business Commitment Letter by inducing Duoyi to: (a) disclose K&M's confidential business information; (2) manufacture products for Ms. Yager and Ms. He, both former employees of K&M, on behalf of NDY; and (3) share K&M's design, strategy, and business

information with Ms. Yager, Ms. He, and NDY, a direct competitor of K&M–all while manufacturing products for K&M.

142.     Upon information and belief, NDY intentionally, improperly, and without justification procured Duoyi's breaches of the Business Commitment Letter with the motivation and intent of pillaging K&M's Trade Secrets and Confidential Information to gain an unfair advantage in the marketplace–by using Duoyi's knowledge of K&M's Trade Secrets and Confidential Information to develop and sell plush toys in direct competition with K&M.

143.     As a direct consequence of NDY's tortious interference with the contractual relationship between Duoyi and K&M, Duoyi has shared K&M's design, strategy, business information, and/or other confidential information to Ms. Yager and Ms. He— former employees of K&M—and NDY—a direct competitor of K&M, and has manufactured products for Ms. Yager and Ms. He—all while manufacturing products for K&M.

144.     As an actual, direct, and proximate result of NDY's tortious interference with the contractual relationship between Duoyi and K&M, K&M has been harmed by the loss of substantial proprietary business information, the significant diminution of the value of its business, and lost profits—the extent of which is difficult to fully ascertain and quantify at this time.  Consequently, K&M is entitled to monetary damages in an amount to be proven at trial.

145.     K&M is also entitled to punitive damages and attorneys' fees and costs as a result of NDY, Ms. Yager, and Ms. He's intentional misconduct.

**Ninth Cause of Action**
**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**
**(against Defendants NDY, Ms. Yager, and Ms. He)**

146.     K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 145 as though fully set forth herein.

147.     There is a business relationship between K&M and its customers.

148.     As senior and managerial employees of K&M, Ms. Yager and Ms. He were intimately familiar with the business relationships between K&M and its customers, and had access to K&M's customer lists, prospect lists, call reports, and customers' names, addresses, and purchasing histories.

149.     Upon information and belief, Ms. Yager and Ms. He intentionally, and without justification, interfered with the business relationships between K&M and its customers—namely, by using and/or disclosing K&M's confidential customer information to solicit business on behalf of NDY.

150.     On January 25, 2013, counsel for K&M informed Ms. Yager and Ms. He that they were improperly disclosing and/or using K&M's confidential customer information to solicit business for NDY, and that their actions violated their agreements with K&M.

151.     Nonetheless, upon information and belief, Ms. Yager and Ms. He continue to interfere with K&M's business relationships with its customers by disclosing and/or using K&M's confidential customer information to solicit business for NDY.

152.     Upon information and belief, NDY continues to use Ms. Yager and Ms. He to steal K&M's confidential customer information, knowing that Ms. Yager and Ms. He are in violation of their agreements with K&M, and is intentionally interfering

29

with K&M's business relationships by using K&M's confidential business information to solicit business on its own behalf.

153. Upon information and belief, by continuing to employ Ms. Yager and Ms. He, NDY is intentionally interfering with the business relationships between K&M and its customers.

154. Upon information and belief, as an actual, direct, and proximate result of Ms. Yager, Ms. He, and NDY's tortious interferences with K&M's business relationships, customers of K&M have terminated and/or reduced their business with K&M to do business with NDY.

155. K&M reasonably believes that, unless enjoined by this Court, Ms. Yager, Ms. He, and NDY will continue to tortiously interfere with its business relationships, causing K&M irreparable harm.

156. K&M has, as an actual, direct, and proximate result of Ms. Yager, Ms. He, and NDY's tortious interferences with K&M's business relationships, suffered monetary damages in an amount to be proven at trial.

157. K&M is also entitled to punitive damages and attorneys' fees and costs as a result of Ms. Yager, Ms. He, and NDY's intentional misconduct.

5534202.1

**Tenth Cause of Action**
**FRAUD**
**(against Duoyi)**

158.    K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 157 as though fully set forth herein.

159.    Beginning on September 25, 2011, and continuing through the present date, Mr. XiaoFeng, as an agent of Duoyi, made the following representations to K&M regarding the business relationship between Duoyi and K&M:

    (a)    Duoyi represented that it would not "disclose Confidential Information [about K&M] to third parties; namely, ex-employees of K&M;

    (b)    Duoyi represented that it would not "manufacture products, do business of any nature[,] or work with **Ex-Employees** of K&M"; and

    (c)    Duoyi represented that it would not "discuss or show K&M's design, strategy, business information or other confidential information about K&M to **Ex-Employees** of K&M or **Competitors** of K&M. [emphasis in original].

160.    The continuing representations described in Paragraph 158 were material to the relationship between Duoyi and K&M.

161.    Despite joining Ms. Yager and Ms. He to form NDY, a company in direct competition with K&M, and using K&M's confidential business information to solicit business from K&M's customers, Duoyi continues to make the representations described in Paragraph 158.

162.    Duoyi knew the representations described in Paragraph 158 were false when they continued to make them, and continued to make the representations with utter disregard and recklessness as to their truth or falsity.

163.    Duoyi made the continuing representations described in Paragraph 158 with the intent of misleading K&M into relying on them, and deliberately concealed from K&M its business relationship with Ms. Yager, Ms. He, and NDY.

164.    Relying on the continuing representations described in Paragraph 158, K&M continued to order plush toys from Duoyi.

165.    As an actual, direct, and proximate result of K&M's detrimental and justifiable reliance on Duoyi's continuing fraudulent representations, K&M has suffered monetary damages in an amount to be proven at trial.

166.    Duoyi's fraudulent representations and concealments were made intentionally, willfully, maliciously, and with conscious disregard for the great and obvious risk of harm to K&M, and these fraudulent representations and concealments constitute aggravated and/or egregious fraud, entitling K&M to punitive damages, attorneys' fees, and costs.

**Eleventh Cause of Action**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**(against Duoyi)**

167.    K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 166 as though fully set forth herein.

168.    Duoyi and K&M are contractual parties to the Business Commitment Letter.

169.    The Business Commitment Letter contains an implied covenant of good faith and fair dealing by and between Duoyi and K&M which prohibits either party from engaging in any activity or conduct that would prevent the other party from receiving the benefits of the Business Commitment Letter.

170.    K&M has successfully performed its duties and obligations under the Business Commitment Letter.

171.    Duoyi, by joining Ms. Yager and Ms. He to form NDY, a company in direct competition with K&M, and using K&M's confidential business information to solicit business from K&M's customers, has breached the implied covenant of good faith and fair dealing.

172.    As an actual, direct, and proximate result of Duoyi's breach of the implied covenant of good faith and fair dealing, K&M has sustained monetary damages in an amount to be determined at trial.

173.    Upon information and belief, Duoyi's breach of the implied covenant of good faith and fair dealing was made intentionally, willfully, maliciously, and with conscious disregard for the great and obvious risk of harm to K&M, entitling K&M to punitive damages, attorneys' fees, and costs.

### Twelfth Cause of Action
### UNFAIR COMPETITION
### (against all Defendants)

174.    K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 173 as though fully set forth herein.

175.    Defendants' infringement upon K&M's intellectual property rights, misappropriation of K&M's Trade Secrets and Confidential Information, breach of

contracts, and tortious interferences with contractual and business relations constitutes unfair competition under the laws of the State of Ohio.

176.    Defendants foregoing actions and conduct have been intentional, malicious, and willful.

177.    As an actual, direct, and proximate result of Defendants' unfair competition, Defendants have benefited and will continue to benefit at the expense of K&M.

178.    As an actual, direct, and proximate result of Defendants' unfair competition, K&M has been harmed by the loss of substantial proprietary business information, the significant diminution of the value of its business, and lost profits—the extent of which is difficult to fully ascertain and quantify at this time.  Consequently, K&M is entitled to monetary damages in an amount to be proven at trial.

179.    Upon information and belief, Defendants will continue their acts of unfair competition, and K&M will be irreparably harmed thereby, unless their acts are enjoined by this Court.

180.    K&M is also entitled to punitive damages, attorneys' fees, and costs as a result of Defendants' intentional misconduct.

**Thirteenth Cause of Action**
**UNJUST ENRICHMENT**
**(against all Defendants)**

181.    K&M repeats and re-alleges each and every allegation of Paragraphs 1 through 180 as though fully set forth herein.

182.    Upon information and belief, Defendants have been unjustly enriched at the expense of K&M by virtue of Ms. Yager and Ms. He's breach of their respective

contractual and common law duties not to disclose K&M's Trade Secrets and Confidential Information.

183.    Upon information and belief, Defendants have been unjustly enriched at the expense of K&M by virtue of Duoyi's breach of the Business Commitment Letter.

184.    Upon information and belief, Defendants have been unjustly enriched at the expense of K&M by virtue of Defendants' foregoing actions and conduct, including but not limited to their misappropriations of K&M's Trade Secrets and Confidential Information, in that customers have terminated and/or reduced their business with K&M to do business with NDY.

185.    Upon information and belief, Defendants have knowledge of the benefits they have received.

186.    It would be inequitable for Defendants to retain the benefits that they have received at the expense of K&M, and K&M asks the Court to order an equitable remedy or award damages to remedy Defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, K&M prays that the Court enter and order judgment and relief against Defendants as follows:

A.    A determination that Defendants and those acting in privity have directly infringed, contributorily infringed, and/or actively induced infringement of K&M's copyright rights in its original works of authorship.

B.    Granting a preliminary and permanent injunction restraining Defendants, their officers, directors, principals, agents, servants, employees, representatives,

successors, and assigns, and all individuals acting in concert or participation with any of them, from:

> i) directly or indirectly infringing K&M's copyrights in any manner, including generally, but not limited to, reproducing, adapting and/or displaying the copyrighted works by continuing to manufacture, distribute, market, advertise, promote, solicit or accept orders for, sell or offer for sale Defendants' infringing toy products or any works that infringe said copyrighted works;
>
> ii) manufacturing, distributing, selling, or offering for sale any unauthorized promotional or marketing materials, labels, packaging, or containers that picture, reproduce, adapt, or display any design that bears a substantial similarity to K&M's plush toy designs;
>
> iii) engaging in any further actions of tortious interference of contractual or business relations with K&M's customers, suppliers, and/or former employees;
>
> iv) breaching the contractual duties owed by Ms. Yager, Ms. He, and Duoyi to K&M as set out in the Yager Agreements, He Agreements, and Business Commitment Letter; and
>
> v) engaging in any further acts of misappropriation of K&M's Trade Secrets and Confidential Information.

C. Directing and ordering that Defendants, their officers, directors, principals, agents, servants, employees, representatives, successors and assigns, and all individuals acting in concert or participation with any of them, be enjoined during the pendency of this action from destroying or otherwise disposing of:

> i) Any merchandise that pictures, reproduces, copies, adapts, or displays designs that bear a substantial similarity to K&M's plush toy designs;
>
> ii) Any promotional and advertising material, labels, packages, wrappers, containers, and any other unauthorized items that reproduce, copy, adapt, or display designs that bear a substantial similarity to K&M's plush toy designs;

5534202.1

       iii)     Any molds, screens, patterns, plates, or negatives used specifically for making or manufacturing products that picture, reproduce, copy, or bear a substantial similarity to K&M's plush toy designs; and

       iv)     Any sales and supplier or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogues, recordings of any type whatsoever and all other business records and documents in respect of the manufacture, purchase, advertising, sale, or offering for sale of products that picture, reproduce, copy, or bear a substantial similarity to K&M's plush toy designs.

     D.     Directing and ordering Defendants to use their best efforts to effectuate the recall, removal, and return from commercial distribution and/or public display of:

       i)     Any merchandise that pictures, reproduces, copies, adapts, or displays designs that bear a substantial similarity to K&M's plush toy designs;

       ii)     Any promotional, marketing, and advertising material, labels, packages, wrappers, containers, and any other unauthorized items that reproduce, copy, adapt, or display designs that bear a substantial similarity to K&M's plush toy designs; and,

       iii)     Any molds, screens, patterns, plates, or negatives used specifically for making or manufacturing products that picture, reproduce, copy, or bear a substantial similarity to K&M's plush toy designs.

     E.     Directing and ordering Defendants to account for all gains, profits, and advantages derived from the acts of infringement and misappropriation and for their other violations of law.

     F.     Directing and ordering that Defendants be ordered to pay to K&M all damages sustained by K&M and any unjust enrichment realized by Defendants by reason

of Defendants' unlawful infringements of K&M's copyrights alleged herein, increased as provided by law.

G.    Directing and ordering that Defendants be ordered to pay to K&M compensatory damages in an amount to be proven at trial to compensate K&M for Defendants' copyright infringement, misappropriation of K&M's trade secrets, breach of contracts, tortious interferences with K&M's contractual and business relations, fraud, unfair competition, breach of implied covenants of good faith and fair dealing, and unjust enrichment.

H.    Directing and ordering that Defendants be ordered to pay to K&M punitive damages in an amount up to three times K&M's damages as provided by Ohio Revised Code §§ 1333.63(B).

I.    Directing and ordering that Defendants hold, as constructive trustees for the benefit of K&M, any and all personal and/or real properties and assets consisting of and/or obtained by profits derived from Defendants' infringements and other unlawful activities alleged herein, and that K&M be granted possession of these properties.

J.    Directing and ordering that Defendants be ordered to pay to K&M its reasonable attorneys' fees and costs incurred herein in view of Defendants' willful and malicious misappropriations of K&M's Trade Secrets and Confidential Information pursuant to Ohio Revised Code § 1333.64(C), infringements of K&M's copyrighted toy designs pursuant to 17 U.S.C. § 505, tortious interferences with K&M's contractual relationships, tortious interferences with K&M's business relationships, fraud; breach of the implied covenant of good faith and fair dealing; and unfair competition.

K.      Awarding K&M pre-judgment and post-judgment interest to the maximum extent provided by law.

L.      Awarding K&M appropriate punitive damages as a result of Defendants' foregoing malicious conduct set forth in the Complaint.

M.      Awarding K&M such other and further relief as the Court may deem just and proper.

> Respectfully submitted,
>
> /s/ Steven E. Seasly
> _____
> Steven E. Seasly (0070536)
> Amanda L. McHenry (0089146)
> Hahn, Loeser & Parks LLP
> 200 Public Square, Suite 2800
> Cleveland, OH 44114
> Telephone:  (216) 621-0150
> Fax:  (216) 241-2824
> E-mail:  sseasly@hahnlaw.com
>            amchenry@hahnlaw.com
>
> *Attorneys for Plaintiff K&M International, Inc.*

## JURY DEMAND

Plaintiff demands a trial by jury of all counts so triable.

> /s/ Steven E. Seasly
> _____
> *One of the Attorneys for Plaintiff K&M International, Inc.*

Dated:  April 8, 2013