## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| K&M INTERNATIONAL, INC., | ) | CASE NO. 1:13CV771 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| NDY TOY, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

On December 8, 2014, this matter was referred pursuant to Local Rule 72.1 for a report and recommendation regarding Plaintiff K&M International, Inc.'s Motion to File Second Amended Complaint[1] (Doc. No. 59.)  On that same date, Defendants NDY Toy, LLC, Debra Yager, Helen He, and Wujiang Douyi Craft Co.'s Motion for Oral Argument on Plaintiff's Motion to File Second Amended Complaint (Doc. No. 109) was referred for resolution.

Upon review, the Court determines oral argument is not necessary to resolve Plaintiff's

---

[1] At that time, Plaintiff's Motion for Sanctions (Doc. No. 60) and Defendants' Motion under Rule 37(c)(1) to Bar Plaintiff's Evidence on Damages (Doc. No. 72) were also referred for a Report and Recommendation.  In addition, the following motions were referred for resolution: (1) Plaintiff's Motion to Re-Designate June 13, 2014 and October 14, 2014 Inspection Photographs as "Confidential" (Doc. No. 63); (2) Defendants' Motion to Strike Plaintiff's Memorandum in support of its Partial Motion for Summary Judgment (Doc. No. 104); and, (3) Defendants' Motion to Strike Plaintiff's Reply in support of its Motion for Sanctions (Doc. No. 108).  Plaintiff's Motion for Oral Argument on Defendants' Motion to Bar Plaintiff's Evidence on Damages (Doc. No. 114) was referred for resolution on January 27, 2015.  The Court reserves judgment on these motions.

Motion.  Thus, Defendants' Motion for Oral Argument (Doc. No. 109) is DENIED with respect

to Plaintiff's Motion to File Second Amended Complaint.[2]  In addition, and for the following

reasons, it is recommended that Plaintiff's Motion to File Second Amended Complaint (Doc. No.

59) be GRANTED.

## I.  Procedural Background & Factual Allegations

On April 8, 2013, Plaintiff K&M International, Inc. ("K&M") filed a thirteen-count

Complaint against Defendants NDY Toy, LLC, Debra Yager, Helen He, and Wujiang Douyi

Craft Co., alleging copyright infringement; misappropriation of trade secrets; breach of contract;

tortious interference with contractual/business relations; fraud; breach of covenant of good faith

and fair dealing; unfair competition; and, unjust enrichment. (Doc. No. 1.)  Defendants filed an

Answer and Counterclaim on May 22, 2013.  (Doc. No. 11.)  Defendants filed additional

Affirmative Defenses and Amended Counterclaims on November 12, 2013.  (Doc. No. 23.)

On July 22, 2014, K&M was granted leave to file a First Amended Complaint.  (Doc. No.

44.)  Therein, K&M alleges "a conspiracy of Shakespearean proportions" in which former

employees Ms. Yager and Ms. He joined forces with manufacturer Wujiang Douyi ("Douyi") to

misappropriate K&M's trade secrets and confidential business proprietary information regarding

its Wild Republic collection of plush toys.  *Id*. at ¶ 1.

Specifically, the First Amended Complaint alleges the following.  K&M designs plush,

polyvinyl chloride, and other toy products depicting "a wide variety of wild animals, dinosaurs,

and other fanciful creatures."  *Id*. at ¶ 15.  K&M is the record owner of the copyright registration

---

[2]  Defendants' motion (Doc. No. 109) also requests oral argument with regard to
Plaintiff's Motion for Sanctions (Doc. No. 59.)  The Court reserves judgment with
respect to the issue of oral argument on Plaintiff's Motion for Sanctions.

related to many of its toy products.  *Id*. at ¶ 16.  It has a "Wild Republic Division" that distributes its products to toy stores and gift shops throughout the country and worldwide, with a particular emphasis on zoos, museums, and aquariums (the "ZMA Market").  *Id*. at ¶ 2, 15.

Defendants Debra Yager and Helen He are former employees of K&M.  *Id*. at ¶ 3.  K&M hired Ms. Yager as an Account Executive in February 1997.  *Id.* at ¶ 18.  She was responsible for generating sales for K&M in the ZMA Market, and was privy to valuable confidential information and trade secrets in the form of customer information.  *Id*. at ¶ 19.  K&M hired Ms. He in July 2006.  *Id.* at ¶ 20.  Ms. He held various positions within the company but was most recently a Plush Toy Designer in K&M's Twinsburg office.  *Id.*  As a Plush Toy Designer, Ms. He managed key design projects and had access to confidential research and development information regarding K&M's plush toy products.  *Id*. at ¶ 21.

K&M required both Ms. Yager and Ms. He to sign various confidentiality, non-competition, and non-disclosure agreements.  *Id.* at ¶ 22.  Ms. Yager resigned from K&M on October 30, 2010.  *Id*. at ¶ 28.  Soon after, she "unreasonably argued" with K&M that she should not be subject to the agreements she had signed and demanded that she be released from them. *Id.* at ¶ 29.  K&M refused to do so.  Ms. He resigned from K&M on July 15, 2011.  *Id.* at ¶ 32.

Duoyi has manufactured and supplied plush toys to K&M since October 2007.  *Id.* at ¶ 33.  In September 2011, Duoyi entered into a Business Commitment agreement with K&M in which it agreed not to (1) disclose K&M's confidential information to third parties, including ex-employees of K&M; or, (2) manufacture products or do any business with K&M's ex-employees. *Id*. at ¶¶ 34, 35.  As of the date of the First Amended Complaint, Duoyi continued to manufacture and supply plush toys for K&M.  *Id*. at ¶ 36.

On July 16, 2012, Ms. Yager, Ms. He and Duoyi entered into a business relationship to form the limited liability company NDY Toy, LLC for the purpose of directly competing with K&M in the plush toy industry.  *Id*. at ¶ 4, 39.  Ms. Yager and Ms. He are principal owners of NDY.  *Id*. at ¶ 40.  K&M alleges Ms. Yager, Ms. He and Duoyi have used K&M's copyrighted plush toy designs to manufacture plush toys which are "virtually identical to K&M's plush toys, and have marketed and sold them on NDY's website, located at www.ndytoy.com."  *Id.* at ¶ 42. These Defendants have also allegedly used K&M's trade secrets and confidential information to solicit business from K&M's existing and potential customers in the ZMA Market.  *Id.* at ¶ 44.

In January 2013, counsel for K&M sent a cease and desist letter to Ms. Yager and Ms. He.  *Id*. at ¶ 47.  K&M alleges Defendants nevertheless continue to breach their contractual and common law duties by using and/or disclosing K&M's trade secrets and confidential information to compete with K&M.  *Id*. at ¶ 49.  K&M also alleges Defendants are willfully continuing to infringe on K&M's valuable copyrights.  *Id*. at ¶ 51.

The First Amended Complaint asserts the following claims: (1) Copyright Infringement (against all Defendants) (Count I); (2) Misappropriation of Trade Secrets (against all Defendants) (Count II); (3) Breach of Contract and Injunctive Relief against Ms. Yager (Count III); (4) Breach of Contract and Injunctive Relief against Ms. He (Count IV); (5) Breach of Contract and Injunctive Relief against Douyi (Count V); (6) Tortious Interference with Contractual Relations (against NDY as to Ms. Yager); (7) Tortious Interference with Contractual Relations (against NDY as to Ms. He); (8) Tortious Interference with Contractual Relations (against NDY, Ms. Yager, Ms. He as to Duoyi); (9) Tortious Interference with a Business Relationship (against NDY, Ms. Yager, and Ms. He); (10) Fraud (against Duoyi); (11) Breach of Covenant of Good

-4-

Faith and Fair Dealing (against Duoyi); (12) Unfair Competition (all Defendants); (13) Unjust Enrichment (all Defendants); and, (14) Cancellation of U.S. Copyright Registration (against Duoyi). In addition, the First Amended Complaint attaches a number of exhibits, including (1) a copy of K&M's 2013 Toy & Plush Wild Republic collection catalog (Exhibit A); and, (2) a Certificate of Copyright Registration covering its 2012 Wild Republic plush toy collection, which is accompanied by photographs of 32 plush animals (Exhibit B). (Doc. Nos. 45-1, 45-2.)

Defendants filed an Answer to the First Amended Complaint and Counterclaims on August 5, 2014. (Doc. No. 47.) Therein, Defendants re-assert the following five counterclaims: (1) Defendant Duoyi's Action on Account for $1,135,174.42 in outstanding invoices and products (Count I); (2) Defendant Duoyi's Claim for Copyright Infringement (Count II);[3] (3) Defendant Duoyi's Claim for Unfair Competition (Count III); (4) Defendant Yager's Claim for Breach of Contract (Count IV); and, (5) Defendant Yager and Defendant He's Claim for Bad Faith Litigation and Abuse of Process (Count V). (Doc. Nos. 23, 47.)

The pleading amendment deadline expired on November 12, 2013 and the non-expert discovery deadline expired on September 11, 2014. *See* Non-Document Orders dated September 27, 2013 and July 22, 2014. On September 19, 2014, K&M filed a Motion to Compel

---

[3] In this claim, Duoyi claims it created and manufactured the 2012 Wild Republic Plush Toy Collection and asserts it applied for and received a copyright registration in this collection from the U.S. Copyright Office. (Doc. No. 23 at ¶¶ 12, 14.) Duoyi further asserts that this collection was not a work for hire and that Duoyi "now and always has been the owner of the entire right, title and interest in the 2012 Wild Republic Plush Toy Collection and in the registration of the copyright for the collection." *Id*. at ¶¶ 16, 17. Duoyi claims K&M is infringing on Duoyi's copyright by "having the 2012 Wild Republic Plus Toy Collection manufactured for it by third parties." *Id.* at ¶ 19.

Inspection.[4]  (Doc. No. 50.)  Among other things, K&M asked the Court to order Defendants to produce for inspection all plush toy samples that NDY has designed, manufactured, advertised, offered for sale, sold, and/or intends to offer for sale.  K&M asserted it first asked Defendant to produce such toy samples on June 10, 2014, and that counsel for both sides thereafter met on June 13, 2014 for a mutual inspection of each other's plush toys.  According to K&M, defense counsel brought 20 toys to this inspection, which they claimed were the only samples that ever existed.  Several days later, however, Ms. Yager testified in deposition that Duoyi had manufactured "about 100" unapproved toy samples for NDY and, further, that these samples were now in Ms. He's possession.  K&M then requested a second inspection to examine these "unapproved toy samples," but Defendants allegedly failed to respond.  On August 19, 2014, Ms. He testified that she developed 100 toys for NDY and they were currently located in her garage. K&M again requested to inspect these toys, but Defendants refused to make them available.

In its Motion, K&M claimed each of these "unapproved" toy samples is a potential copyright infringement.  Therefore, K&M maintained, these samples were highly relevant and should have been produced for inspection in June 2014.  Defendant strenuously opposed the motion, arguing the only plush toys "at issue" were those pictured in Exhibit B to the Amended Complaint and, therefore, the 100 unapproved toy samples in Ms. He's garage were not relevant. (Doc. No. 53.)

---

[4] K&M first filed its Motion to Compel on September 11, 2014.  (Doc. No. 48.)  This motion was denied on the grounds that Plaintiff had failed to certify efforts to resolve the dispute by way of affidavit of counsel, as required by the Court's Standing Order.  *See* Non-Document Order dated September 15, 2014.  In its re-filed Motion to Compel, K&M included an affidavit from counsel, certifying the parties' efforts to resolve the dispute.  (Doc. No. 50-1.)

On October 1, 2014, the Court conducted a telephonic status conference with counsel regarding Plaintiff's Motion to Compel.  (Doc. No. 55.)  At that time, the Court ordered counsel to appear for an in-person status conference twelve days later, on October 14, 2014.  *Id*. at 1.  Counsel for K&M was ordered to bring to that conference samples of the plush toys identified in Exhibit B to the First Amended Complaint.  *Id*.  In addition, the Court ordered that "[c]ounsel for Defendants will either bring the approximately 100 unapproved toy samples located in Defendant He's garage to the October 14th conference, or will provide counsel for Plaintiff an opportunity to inspect these toy samples prior to the date of the conference."  *Id*. at 1-2.

On October 14, 2014, counsel appeared at the Courthouse with their respective plush toys.[5]  Counsel for K&M arrived with 32 plush toys from its Wild Republic Collection, while defense counsel brought multiple large boxes filled with stuffed animals.[6]  Defense counsel requested the court-ordered inspection be designated as "Attorney Eyes Only" under the parties' Joint Stipulated Protective Order because the toy samples were "one of a kind" and Defendants might want to compete with K&M in the future.  The Court agreed to the "Attorney Eyes Only" designation, but recognized that K&M reserved the right to object to the designation at a later date.  (Doc. No. 57 at 2.)

---

[5]  Defense counsel indicated they were unable to arrange an inspection of Defendants' unapproved toy samples prior to the in-person conference because the samples were located in Ms. He's home and she did not want Plaintiff's counsel on her private property.

[6]  Defense counsel estimated that they had brought approximately 180 toy samples.  K&M now asserts defense counsel brought approximately 400 toy samples.  Although an exact count was not made by the Court at the time, the Court notes that Defendants brought at least a dozen large boxes that had to be brought up through the freight elevator on two oversize flatbed dollies.

On October 30, 2014, K&M filed a  Motion for Leave to file a Second Amended Complaint (Doc. No. 59) and a Motion for Sanctions (Doc. No. 60.)  In a nutshell, K&M argued the Court-ordered October 14, 2014 inspection revealed that Defendants had deliberately concealed relevant toys in order to prevent K&M from asserting additional copyright infringement claims and conducting further discovery in connection with those toys.  K&M asserted that Defendants misrepresented the number and nature of the toy samples produced by Defendants, as well as the date on which Defendant NDY allegedly ceased operation.  It emphasized that defense counsel initially said there were only 20 toy samples; and only revised that figure after Ms. He testified that she had approximately 100 toy samples in her garage. K&M estimated defense counsel brought 400 toy samples to the inspection and insisted they were all highly relevant and "undeniably fell within the scope of K&M's properly-propounded discovery requests."  (Doc. No. 60 at 10.)  In sum, K&M declared that "the existence of these toys completely alters this case."  *Id*.

K&M sought leave to file a Second Amended Complaint "for the limited purpose of supplementing its copyright infringement claim . . . with additional copyright registrations owned by K&M for toys designs infringed upon, and which infringement was revealed for the first time at the October 14, 2014 inspection."  (Doc. No. 59 at 4.)  It also requested severe sanctions, arguing that "this Court should sanction Defendants' misconduct by dismissing their counterclaims, entering a default judgment against them on all counts asserted by K&M, and requiring them to reimburse K&M for the costs and fees K&M was forced to expend pursuing discovery Defendants were legally obligated to provide."  (Doc. No. 60 at 1.)  In addition, K&M filed a "Motion to Re-Designate 6/13/14 and 10/14/14 Inspection Photographs as 'Confidential,'"

-8-

in which it asked the Court to lift the "Attorney Eyes Only" designation relating to the two inspections in order to allow counsel for K&M to share the photographs of Defendants' toy samples with their client and obtain its full assistance in litigating this case. (Doc. No. 63.)

Defendants opposed K&M's various motions; requested oral argument; and, filed a Motion Under Fed. R. Civ. P. 37(c)(1) to Bar Plaintiff's Evidence on Damages. (Doc. Nos. 72, 76, 78, 80, 109.) K&M opposed Defendants' Motion to Bar Evidence and requested oral argument. (Doc. Nos. 84, 114.) In the meantime, on November 5, 2014, Defendants moved for summary judgment on K&M's copyright infringement, trade secrets, breach of contract, tortious interference, fraud, unfair competition, unjust enrichment, and breach of covenant of good faith and fair dealing claims.[7] (Doc. Nos. 69, 70.) Several weeks later, on December 1, 2014, K&M moved for partial summary judgment on its breach of contract claim, and all five of Defendants' Counterclaims. (Doc. No. 91.)

## II.   Motion for Leave to File Second Amended Complaint

In its Motion, K&M seeks leave to amend the complaint in order to supplement its copyright infringement claim to include additional copyright registrations relating to the toy samples first produced by Defendants during the October 14, 2014 Court-ordered inspection. (Doc. No. 59.) K&M insists that, in both October 2013 and June 2014, it requested samples of all plush toy products that NDY had "designed, manufactured, advertised, offered for sale, and/or

---

[7] K&M filed a motion asking the Court to postpone any further briefing or consideration of Defendants' summary judgment motion in order to allow time for the Court to rule on K&M's pending Motions for Sanctions. (Doc. No. 75.) Defendants opposed the motion. (Doc. No. 85.) K&M's motion for postponement has not been referred to the undersigned, and remains pending as of the date of this Order. In addition, the parties' cross motions for summary judgment were also not referred.

intended to offer for sale." *Id*. at Exhs. A, C.  According to K&M, defense counsel produced only 20 samples and indicated they were "the only samples that ever existed." *Id.* at Exh. D. When subsequent depositions suggested the existence of approximately 100 toy samples, Defendants refused to produce them for inspection until ordered to do so by the Court.  K&M asserts defense counsel brought approximately 400 plush toy samples to the October 14, 2014 Court-ordered inspection and these toys "did not lack relevance, as defense counsel had repeatedly insisted even through the inspection; rather, these toys were withheld because of their striking resemblance to the plush toy products created and owned by K&M." *Id.* at 4.

K&M acknowledges the pleading amendment date expired long ago (November 2013). However, it argues that "leave to amend is particularly warranted where, as here, the moving party learned critical facts during discovery." *Id.* at 5.  K&M argues Defendants will not be unduly prejudiced or delayed, "especially in light of the fact that it was their deliberate acts of concealment . . . that prevented K&M from discovering the full extent of their infringements sooner." *Id.*

Defendants argue K&M has failed to show good cause for amending the pleadings at this late stage of the litigation.  Defendants maintain they produced for inspection all toy samples that were "put into issue" by Exhibit B to the First Amended Complaint and insist no other toy samples are relevant because NDY has never advertised, manufactured, offered for sale, sold or imported "any product of any type."  (Doc. No. 78 at 2-3.) They claim the NDY website was never fully operational– it was under construction and no orders could be placed on it. *Id*. at 3.

-10-

At most, Defendants argue NDY "worked on designs of new products."[8]  *Id.* at 4.  They claim "once a product was designed to the approval of NDY, it was the intention of NDY to ultimately have that product manufactured so that NDY could offer it for sale."  *Id.*  The samples initially provided for inspection to K&M were those that had been "approved/finalized" by NDY; i.e., those it intended to sell.  Defendants claim they produced these "approved" samples for inspection even though they believe these samples could not form the basis of a copyright claim as a matter of law since Defendants never manufactured, offered for sale, sold or imported them.

Moreover, Defendants assert that, in July 2014 and approximately two weeks after Ms. Yager's deposition, "NDY provided K&M's counsel with a CD in native format showing a large number of the plush toys that NDY had been developing for its anticipated product line."  *Id.* Several days later, Defendants provided Plaintiff's counsel with "clarified illustrations from the CD and zip file." *Id.*  Thus, Defendants maintain that, by no later than July 2014, Plaintiff was well aware of "the extent of the product line contemplated by NDY."  *Id.* at 5.  Therefore, they claim K&M cannot show good cause for its delay in seeking to amend the complaint.

Defendants further argue that it would be futile to allow K&M to amend because "the unapproved toy samples could never support a copyright claim."  *Id.* at 7.  They claim that "until a design was approved, each plush toy was in the developmental stage, the design was not complete, there was no 'manufacture' and there was no 'intent to offer' that toy for sale– there

---

[8]  In its summary judgment briefing, K&M strongly contests this factual assertion, insisting that "at the time K&M filed this lawsuit, NDY was a fully-operating business, which had simply not yet made a sale."  (Doc. No. 110 at 14.)  Among other things, K&M asserts "NDY placed a March 2013 order with Duoyi for several thousands of nature-themed plush products, including many of the same products K&M designed and sold."  *Id.*

-11-

was nothing to sell." *Id*. at 5.  Moreover, Defendants claim that, to the extent any samples appeared on NDY's website, "such appearance was inadvertent and without NDY's authorization, having been placed there by the Chinese website designer while the website was under construction, and not by NDY."  *Id*. at 7.  Thus, Defendants argue that "none of the activities of Defendants with regard to the samples now sought to be brought into issue could possibly support a claim of copyright infringement."  *Id.*

Finally, Defendants assert K&M's motion should be denied as having been brought in bad faith.  They claim K&M knew from the outset that Defendants did not manufacture, offer for sale, sell or import any product of any type.  Defendants also claim K&M has failed to produce any evidence of damages and, further, has failed to even prove that it owns the copyright registrations at issue.  Defendants argue that, by seeking to amend the complaint, K&M's primary goal is to "frustrate and delay the entry of defendants into fair competition with K&M." *Id*. at 9.   K&M did not file a Reply Brief in support of its Motion.

Federal Rule of Civil Procedure 15(a) reads as follows:

**(a) Amendments Before Trial**.

(1) *Amending as a Matter of Course*.  A party may amend its pleading once as a matter of course within:

> (A)  21 days after serving it, or

> (B)   if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 2(b), (e), or (f), whichever is earlier.

**(2) *Other Amendments*.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires**.

Fed. R. Civ. P. 15(a) (emphasis added).

-12-

Factors that may affect the determination of whether to allow a party to amend its pleading under Rule 15(a)(2) include undue delay in filing; lack of notice to the opposing party; bad faith by the moving party; repeated failure to cure deficiencies by previous amendment; undue prejudice to the opposing party; and, futility of the amendment. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). *See also Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010). Delay alone is not a sufficient reason to deny leave to amend, but notice and substantial prejudice are critical factors in the determination. *Id. Partner & Partner, Inc. v. Exxonmobil Oil Corp.*, 326 Fed. Appx. 892, 899 (6th Cir. 2009). Nonetheless, "it is well settled law that [a] district court may deny a motion to amend if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986) (*citing Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)); *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). In other words, where the amendment would be futile, there is no reason to allow it. *See, e.g., Colvin*, 605 F.3d at 294.

Moreover, the Sixth Circuit has held that, when a pleading amendment deadline in a scheduling order has passed, "a plaintiff first must show good cause under [Federal Rule Civ. Proc.] 16(b)[9] for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). *See also Korn v. Paul Revere Life Ins. Co.*, 382 Fed. Appx. 443, 449-450 (6th Cir. 2010) ("To satisfy the *Leary*

---

[9] Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."

standard, [plaintiff] must . . . explain why he failed to move for the amendment at a time that would not have required modification of the scheduling order");  *Inge v. Rock Financial Corp*., 281 F.3d 613, 625 (6th Cir. 2002) ("'The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements'") (quoting *Bradford v. DANA Corp*., 249 F.3d 807, 809 (8th Cir. 2001)).  "In order to demonstrate good cause, the plaintiff must show that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment." *Ross v. American Red Cross*, 567 Fed. Appx. 296, 306 (6th Cir. 2014).  *See also Coe v. Homecomings Financial, LLC*, 509 Fed. Appx. 520, 522 (6th Cir. 2013); *Leary*, 349 F.3d at 909; *Inge*, 281 F.3d at 625; *Duggins v. Steak 'N Shake, Inc*., 195 F.3d 828, 834 (6th Cir. 1999).

Here, the Court's scheduling order established a pleading amendment deadline of November 12, 2013.  *See* Non-Document Order dated September 27, 2013.  Thus, in evaluating K&M's Motion for Leave to Amend, the Court must first consider whether K&M has established "good cause" for its failure to amend prior to that deadline.

The record reflects the following.  K&M states it initially based its copyright infringement claim on the plush toys that had been publicly displayed on NDY's website, noting those were the only NDY toys that K&M was aware existed at the time it filed its complaint.  On October 24, 2013, several weeks prior to the pleading amendment deadline, K&M formally requested that Defendants produce "[s]amples of every plush toy product that NDY has designed, manufactured, advertised, offered for sale, sold, and/or intends to offer for sale."  (Doc. No. 59-1 at 14.)  On December 9, 2013, Defendants responded that "[s]amples will be made available for inspection."  (Doc. No. 59-2 at 18.)  Defendants' response did not indicate that they intended to

-14-

limit their production to only those approved toy samples that corresponded to the plush toys pictured in Exhibit B to the Amended Complaint.  Indeed, Defendants' response did not raise any specific objections to this particular request or otherwise suggest that it intended to withhold from production any toy samples on the basis they lacked relevance.

Thus, the Court finds that, at the time the pleading amendment deadline expired, K&M had no reason to suspect additional NDY toys existed that might necessitate amendment of its copyright infringement claim.  This possibility first came to light during the deposition of Ms. Yager six months later on June 17, 2014.  During that deposition, Ms. Yager testified that Duoyi had manufactured "about 100" toy samples for NDY, which were now in Ms. He's possession. (Doc. No. 67-1 at Tr. 379-380.)  As this number greatly exceeded the 19 plush toys Defendants had previously produced for inspection, K&M promptly requested Defendants produce these additional toys for inspection.  (Doc. No. 59-6 at 1-2.)

Defendants failed to respond to the request for inspection.  However, on July 14, 2014, Defendants did produce a CD in native format showing a large number of plush toys that NDY had been developing for its anticipated product line.  (Doc. No. 79, Exhs. M & N.)  Several days later, Defendants provided clarified illustrations from the CD and zip file.  (Doc. No. 79, Exh. O.)  On August 19, 2014, K&M deposed Ms. He and specifically asked her regarding several of the documents provided on the CD.  Ms. He confirmed that she participated in developing approximately 100 plush toys for NDY and that these toys were located in her garage.  (Doc. No. 67-2 at Tr. 35-38.)  K&M once again requested Defendants produce these additional toy samples. When Defendants refused to do so, K&M promptly filed the motion to compel which ultimately led to the Court-ordered inspection on October 14, 2014.  K&M asserts defense counsel brought

-15-

approximately 400 plush toy samples to this inspection, none of which had been previously produced.

Based on the above, the Court finds K&M had good cause for its failure to seek leave to amend prior to the November 2013 pleading amendment deadline. Prior to this deadline, K&M was not aware that NDY had developed and produced samples of additional plush toys that had not been pictured on its website. Moreover, Defendants gave K&M no reason to suspect that there were hundreds of additional toy samples, either in their initial discovery responses or during the June 2014 inspection. K&M first learned this information as a result of the deposition of Ms. Yager in June 2014, six months after the expiration of the pleading amendment deadline. Once it became aware that there might be additional relevant toy samples, K&M diligently requested additional information and inspection. After Defendants refused, K&M promptly filed a Motion to Compel. Based on this sequence of events, the Court finds K&M has shown that the original pleading amendment deadline could not reasonably have been met despite due diligence. *See Ross*, 567 Fed. Appx. at 306.

The Court further finds Defendants will not be unduly prejudiced by allowing K&M to amend. K&M seeks leave to amend its copyright infringement claim only and, thus, any additional discovery necessitated by the filing of the Second Amended Complaint would be limited to that claim. Further, it is not clear that amendment of this claim will necessarily require an overly burdensome amount of additional discovery, particularly since Defendants have repeatedly insisted that they have not withheld any information regarding NDY's anticipated product line. Moreover, to the extent additional discovery is necessary, the Court finds Defendants are not in a position to complain. Had Defendants produced these additional toy

-16-

samples during the June 2014 inspection (or, at a minimum, clearly explained to K&M that such samples existed but were not being produced), K&M could have sought leave to amend its complaint prior to the close of discovery in September 2014.[10]  Thus, to a certain extent, Defendants' own conduct has necessitated the possible re-opening of discovery for the limited purpose of exploring K&M's additional copyright claims.

Having determined that K&M has demonstrated good cause under Rule 16(b) for failing to earlier seek leave to amend, the Court will now consider whether amendment is proper under Rule 15(a).  *See Leary*, 349 F.3d at 909.  As noted *supra*, the following factors are relevant in considering whether to allow a party to amend its pleading under Rule 15(a)(2): undue delay in filing; lack of notice to the opposing party; bad faith by the moving party; repeated failure to cure deficiencies by previous amendment; undue prejudice to the opposing party; and, futility of the amendment.  *See Wade*, 259 F.3d at 459; *Colvin*, 605 F.3d at 294.

For the same reasons articulated in connection with the above good cause analysis, the Court finds K&M did not engage in undue delay in seeking leave to amend.  K&M was not even aware of the existence of the additional NDY toy samples until, at the earliest, June 2014. Thereafter, it promptly and repeatedly requested inspection of these toys.  It is true that Defendants did produce, in July 2014, a CD with images of many of the plush toys that NDY had

---

[10] The Court recognizes that, on July 14, 2014, Defendants produced a CD with images of a large number of the plush toys that NDY had been developing.  However, as Defendants acknowledge, this CD contained a vast amount of information.  It is reasonable to assume that it took K&M time to digest this information and, further, to obtain explanation of the documents contained therein through its deposition of Ms. He.  As the CD was only provided three weeks prior to the close of discovery, Defendants cannot argue this production alone should have alerted K&M to amend its complaint prior to the close of discovery.

been developing.  However, Defendants' suggestion that K&M engaged in undue delay by thereafter waiting until November 2014 to seek leave to amend, is not well taken.  It is reasonable to assume that it may not have been enough for K&M to simply look at the photographs and lists of plush toys contained on this CD in order to fully understand the status of the toys or whether their existence would support a potential copyright infringement claim.  In order to better understand the meaning of the documents and photographs provided, K&M questioned Ms. He about them during her deposition.  Based on Ms. He's deposition testimony, K&M again requested inspection of the toy samples not previously produced.  Defendants' refusal to produce such toys for inspection forced K&M to file a motion to compel, thereby resulting in additional delay in resolving the issue.  The Court finds K&M did not engage in undue delay in seeking leave to amend.

Similarly, the Court finds K&M did not fail to provide notice to Defendants of their interest in pursuing expanded copyright claims.  Well over a year ago, on October 24, 2013, K&M formally requested that Defendants produce "[s]amples of *every plush toy product* that NDY has *designed*, manufactured, advertised, offered for sale, sold, and/or intends to offer for sale."  (Doc. No. 59-1 at 14) (emphasis added).  Thus, although the complaint itself was premised on the approximately 19 toys displayed on NDY's website, K&M clearly articulated, as early as October 2013, a desire to examine every plush toy product that NDY had designed.  Accordingly, the Court finds Defendants cannot say they lacked notice that K&M was interested in pursuing this line of inquiry.

Defendants nonetheless argue that none of the toy samples at issue are relevant because the designs for such toys were "incomplete" and NDY never manufactured, advertised, sold, or

-18-

intended to offer them for sale. Defendants further assert K&M has failed to even prove that it (as opposed to Defendant Duoyi) owns the copyright registrations at issue. Thus, Defendants maintain K&M's motion should be denied as futile because "none of the activities of Defendants with regard to the samples now sought to be brought into issue could possibly support a claim of copyright infringement."[11]  (Doc. No. 78 at 7.)

The Copyright Act provides protection for original works of authorship expressed in various media. 17 U.S.C. § 101-1332. Direct copyright infringement occurs when anyone "violates any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). Exclusive rights include the rights to reproduce the copyrighted work; to create derivative works; to distribute copies; to perform publicly a copyrighted work; and, to display publicly a copyrighted work. 17 U.S.C. § 106. A plaintiff may bring a claim against a person who infringes on any of the plaintiff's exclusive rights in a copyright by demonstrating two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). *See also Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003); *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007). Copying can be established indirectly by proof of access and "substantial similarity;" or by direct evidence of copying. *See Bridgeport Music, Inc., v. UMG Recordings, Inc.,* 585 F.3d 267, 274 (6th Cir. 2009); *Kohus,* 328 F.3d at 854.

The Court cannot find, at this stage of the litigation, that it would be futile to allow K&M to amend its copyright infringement claim to include the approximately 400 unapproved toy

---

[11] The Court notes that Defendants argue this issue, at length, in their Motion for Summary Judgment, which has not been referred to the Court.

samples at issue.  Even assuming Defendants did not manufacture, advertise, offer for sale, sell, or import the unapproved toy samples at issue, the Court finds these samples are relevant to (or may lead to the discovery of relevant evidence regarding) whether Defendants reproduced one or more of K&M's copyrighted works and/or created a derivative work.  Additionally, K&M cites deposition testimony of Ms. He that at least some of the unapproved toy samples at issue had been displayed in NDY's Solon, Ohio showroom, which at least suggests that they may have been "publicly displayed" at some point in time.  While Defendants may ultimately be able to demonstrate that these toy samples do not support a copyright infringement claim (an issue upon which this Court does not offer an opinion), the Court finds the matter is not so clear-cut that it would rise to the level of futility to allow K&M to amend its complaint.

Finally, the Court finds K&M's motion was not brought in bad faith.  Clearly, the parties strongly disagree regarding the legal and factual merits of K&M's copyright claims.  In and of itself, however, this does not translate into a finding that K&M has acted in bad faith in pursuing these claims.  Defendants' arguments to the contrary are without merit.

Accordingly, and for all the foregoing reasons, it is recommended that K&M be permitted to amend the complaint to supplement its copyright infringement claim to include the unapproved toy samples at issue.

## II.    Conclusion

For the foregoing reasons, it is recommended that K&M's Motion for Leave to File Second Amended Complaint (Doc. No. 59) be GRANTED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: February 6, 2015

-20-

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).