# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| K&M INTERNATIONAL, INC., | ) | CASE NO. 1:13CV771 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| NDY TOY, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |

On December 8, 2014, this matter was referred pursuant to Local Rule 72.1 for resolution of Plaintiff K&M International, Inc.'s Motion to Re-Designate June 13, 2014 and October 14, 2014 Inspection Photographs as "Confidential."  (Doc. No. 63)  For the following reasons, Plaintiff's Motion is GRANTED.[1]

_____

[1] On the same date, Plaintiff's Motions for Leave to File Second Amended Complaint and for Sanctions (Doc. Nos. 59, 60) and Defendants' Motion under Rule 37(c)(1) to Bar Plaintiff's Evidence on Damages (Doc. No. 72) were referred for a Report and Recommendation.  In addition, the following motions were referred for resolution: (1) Defendants' Motion to Strike Plaintiff's Memorandum in support of its Partial Motion for Summary Judgment (Doc. No. 104); and, (2) Defendants' Motion to Strike Plaintiff's Reply in support of its Motion for Sanctions (Doc. No. 108).  Plaintiff's Motion for Oral Argument on Defendants' Motion to Bar Plaintiff's Evidence on Damages (Doc. No. 114) was subsequently referred for resolution on January 27, 2015.  On February 6, 2015, the Court issued a Report & Recommendation that Plaintiff's Motion for Leave to File Second Amended Complaint be granted.  (Doc. No. 131.)  The Court reserves judgment on the remaining referred motions.

I.    **Procedural Background & Factual Allegations**

On April 8, 2013, Plaintiff K&M International, Inc. ("K&M") filed a thirteen-count Complaint against Defendants NDY Toy, LLC, Debra Yager, Helen He, and Wujiang Douyi Craft Co., alleging copyright infringement; misappropriation of trade secrets; breach of contract; tortious interference with contractual/business relations; fraud; breach of covenant of good faith and fair dealing; unfair competition; and, unjust enrichment.  (Doc. No. 1.)  Defendants filed an Answer and Counterclaim on May 22, 2013, followed by additional Affirmative Defenses and Amended Counterclaims on November 12, 2013.  (Doc. Nos. 11, 23.)

On July 22, 2014, K&M was granted leave to file a First Amended Complaint.  (Doc. No. 44.)  Therein, K&M alleges "a conspiracy of Shakespearean proportions" in which former employees Ms. Yager and Ms. He joined forces with manufacturer Wujiang Douyi ("Douyi") to misappropriate K&M's trade secrets and confidential business proprietary information regarding its Wild Republic collection of plush toys.  *Id*. at ¶ 1.

Specifically, the First Amended Complaint alleges the following.  K&M designs plush, polyvinyl chloride, and other toy products depicting "a wide variety of wild animals, dinosaurs, and other fanciful creatures."  *Id*. at ¶ 15.  K&M is the record owner of the copyright registration related to many of its toy products.  *Id*.  at ¶ 16.  It has a "Wild Republic Division" that distributes its products to toy stores and gift shops throughout the country and worldwide, with a particular emphasis on zoos, museums, and aquariums (the "ZMA Market").  *Id.* at ¶ 2, 15.

Defendants Debra Yager and Helen He are former employees of K&M.  *Id*. at ¶ 3.  K&M hired Ms. Yager as an Account Executive in February 1997.  *Id.* at ¶ 18.  She was responsible for generating sales for K&M in the ZMA Market, and was privy to valuable confidential

-2-

information and trade secrets in the form of customer information.  *Id.* at ¶ 19.  K&M hired Ms. He in July 2006.  *Id.* at ¶ 20.  Ms. He held various positions within the company but was most recently a Plush Toy Designer in K&M's Twinsburg office.  *Id.*  As a Plush Toy Designer, Ms. He managed key design projects and had access to confidential research and development information regarding K&M's plush toy products.  *Id.* at ¶ 21.

K&M required both Ms. Yager and Ms. He to sign various confidentiality, non-competition, and non-disclosure agreements.  *Id.* at ¶ 22.  Ms. Yager resigned from K&M on October 30, 2010.  *Id.* at ¶ 28.  Soon after, she "unreasonably argued" with K&M that she should not be subject to the agreements she had signed and demanded that she be released from them. *Id.* at ¶ 29.  K&M refused to do so.  Ms. He resigned from K&M on July 15, 2011.  *Id.* at ¶ 32.

Duoyi has manufactured and supplied plush toys to K&M since October 2007.  *Id.* at ¶ 33.  In September 2011, Duoyi entered into a Business Commitment agreement with K&M in which it agreed not to (1) disclose K&M's confidential information to third parties, including ex-employees of K&M; or, (2) manufacture products or do any business with K&M's ex-employees. *Id.* at ¶¶ 34, 35.  As of the date of the First Amended Complaint, Duoyi continued to manufacture and supply plush toys for K&M.  *Id.* at ¶ 36.

On July 16, 2012, Ms. Yager, Ms. He and Duoyi entered into a business relationship to form the limited liability company NDY Toy, LLC for the purpose of directly competing with K&M in the plush toy industry.  *Id.* at ¶ 4, 39.  Ms. Yager and Ms. He are principal owners of NDY.  *Id.* at ¶ 40.  K&M alleges Ms. Yager, Ms. He and Duoyi have used K&M's copyrighted plush toy designs to manufacture plush toys which are "virtually identical to K&M's plush toys, and have marketed and sold them on NDY's website, located at www.ndytoy.com."  *Id.* at ¶ 42.

-3-

These Defendants have also allegedly used K&M's trade secrets to solicit business from K&M's existing and potential customers in the ZMA Market.  *Id.* at ¶ 44.

In January 2013, counsel for K&M sent a cease and desist letter to Ms. Yager and Ms. He.  *Id.* at ¶ 47.  K&M alleges Defendants nevertheless continue to breach their contractual and common law duties by using and/or disclosing K&M's trade secrets and confidential information to compete with K&M.  *Id.* at ¶ 49.  K&M also alleges Defendants are willfully continuing to infringe on K&M's valuable copyrights.  *Id.* at ¶ 51.  K&M filed its Complaint on April 8, 2013, and its First Amended Complaint on July 22, 2014.  (Doc. Nos. 1, 44.)

In the meantime, discovery proceeded.  In October 2013, K&M requested that Defendants produce "[s]amples of every plush toy product that NDY has designed, manufactured, advertised, offered for sale, sold, and/or intends to offer for sale."  (Doc. No. 59-1 at 14.)  On June 13, 2014, counsel met for a mutual inspection of the parties' respective plush toys.  Counsel for K&M brought approximately 32 plush toys from its Wild Republic collection, while counsel for Defendants brought approximately 20 plush toys.  During the inspection, photographs were taken of each toy.  Counsel for Defendants requested that all of the photographs taken by counsel for K&M be designated as "Attorney Eyes' Only" under the parties' Joint Stipulated Protective Order.  (Doc. No. 26.)  Counsel for K&M objected, arguing that such a designation precluded them from discussing the allegedly infringing toys with their client.

On October 14, 2014, counsel appeared at the federal courthouse for second, court-ordered inspection of their respective plush toys.[2]  Counsel for K&M again arrived with 32 plush

---

[2]The circumstances surrounding this court-ordered inspection are discussed at length in the Court's Report & Recommendation (Doc. No. 131) regarding Plaintiff's Motion for Leave to Second Amended Complaint, and will not be repeated herein.

-4-

toys, while defense counsel brought multiple large boxes filled with stuffed animals.[3]  Defense

counsel requested the court-ordered inspection be designated as "Attorney Eyes Only" under the

Joint Stipulated Protective Order because the toy samples were "one of a kind" and Defendants

might want to compete with K&M in the future.  The Court agreed to the "Attorney Eyes Only"

designation, but recognized that K&M reserved the right to object to the designation at a later

date.  (Doc. No. 57 at 2.)

On October 30, 2014, K&M filed its Motion to Re-Designate June 13, 2014 and October

14, 2014 Inspection Photographs as "Confidential."  (Doc. No. 63.)  Defendants filed a Brief in

Opposition on November 17, 2014.[4]  (Doc. No. 76.)

**II.**　　**Motion to Re-designate Inspection Photographs**

In its Motion, K&M argues the designation of its inspection photographs as  "Attorney

Eyes Only" "makes it impossible for K&M's counsel to speak with K&M about the newly-

revealed toys, and to accurately assess and prepare their case against Defendants."  (Doc. No. 63

at 2.)  It asks the Court to re-designate the photos as "Confidential" under the parties' Joint

Stipulated Protective Order, which would allow counsel for K&M to share the photographs with

their client, consultants and experts but would still protect Defendants' interests by preventing

disclosure of the photographs to the public.

---

[3]  Defense counsel initially estimated that they had brought approximately 180 toy
samples. K&M asserts defense counsel brought approximately 400 toy samples.
Although an exact count was not made by the Court at the time of the inspection, the
Court notes that Defendants brought at least a dozen large boxes that had to be
transported through the freight elevator on two oversize flatbed dollies.

[4] On November 25, 2014, K&M sought leave to file a Sur-Reply in support of its Motion
to Re-Designate.  (Doc. No. 87.)  This motion was denied on December 1, 2014.

Defendants maintain K&M's motion should be denied "because it seeks to nullify a critical portion of the protective order."  (Doc. No. 76 at 1.)  They assert that "[t]he approximately 400 plush toy samples that defendants presented for inspection under the designation 'Attorney Eyes Only' included not only the toy samples that were under development at the time this lawsuit was filed, but also samples purchased on the open market in Hong Kong– everything that NDY had on the shelves."  *Id.*  Defendants maintain that development activities relating to these toy samples "is unquestionably commercially sensitive information that must not be made available to a competitor, particularly a competitor such as K&M."  *Id.* at 2.  In addition, Defendants emphasize that the 400 toy samples at issue have never been shown to anyone.  They state there has been no public disclosure of these "works in progress," and that to allow K&M to view pictures of them "would eviscerate the protection offered by the 'Attorney Eyes Only' designation specifically afforded by the protective order."  *Id.* at 3.

The record reflects a Joint Stipulated Protective Order was entered in this matter on November 27, 2013.  (Doc. No. 26.)  Under that Order, certain sensitive or proprietary material (as defined therein) may be designated as "confidential" or "attorney eyes only."  Paragraphs 3 and 4 of the Protective Order provide as follows:

**3.  Documents Which May be Designated as "CONFIDENTIAL"**.

Any party may designate documents as "CONFIDENTIAL" upon making a good faith determination that the documents contain information protected from disclosure by statute or that contain:

(a) Any person's medical information/records;
(b) Social Security numbers;
(c) Garnishment information;
(d) Financial information, such as tax information;

(e) Customer or client information;
(f) Spousal information;
(g) Information relating to children;
(h) Internal e-mails and memoranda of the Company;
(i) Statutorily protected trade secrets; and
(j) Any such other proprietary commercial information that is not
publicly available.

Public records and other information or documents that are publicly available
may not be designated as "CONFIDENTIAL."

**4.  Documents Which May Be Designated as "ATTORNEYS' EYES ONLY".**

Any party may designate documents as "ATTORNEYS' EYES ONLY" upon making a
good faith determination that the document is not appropriate for disclosure to any party
other than attorneys because it contains **highly and extremely sensitive trade secret or
other proprietary, commercially sensitive, strategic planning, or competitive
analysis, research development, or commercial information deemed sufficiently
confidential that there is a risk of injury to designating party if the material is
disclosed to any party.**

Public records and other information or documents that are publicly available may not be
designated as "ATTORNEYS' EYES ONLY".

(Doc. No. 26) (emphasis added).  Paragraph 6 of this Order then provides that "confidential"

material may be disclosed to counsel; parties; court reporters and recorders; consultants,

investigators, and experts; and others by consent.  (Doc. No. 26 at 4.)  "Attorney Eyes Only"

material, on the other hand, may only be disclosed to counsel; court reporters and recorders; and,

consultants and investigators.  *Id.*  It may not be disclosed to parties.  *Id.*

"An AEO [or Attorney Eyes Only] designation is 'the most restrictive possible protective

order,' as it confines dissemination of discovery materials only to the opposing party's attorneys

and other consultants/experts specified in the agreement."  *Penn, LLC v. Prosper Business

Development Corp*., 2012 WL 5948363 at * 4 (S.D. Ohio Nov. 28, 2012).  *See also Brown v.

Tellermate Holdings, LTD*., 2014 WL 2987051 at * 22 (S.D. Ohio July 1, 2014).  Thus, in

-7-

general, courts uphold AEO designations only "when especially sensitive information is at issue or the information is to be provided to a competitor." *Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, 2008 WL 839745, at *4 (W.D.Tenn. Mar.27, 2008) (citing cases). *See also U.S. ex rel. Daugherty v. Bostwick Labs.*, 2013 WL 3270355 at *2 (S.D. Ohio June 26, 2013). Moreover, many courts have required a party seeking this designation to describe the alleged harm it will suffer from any disclosure with a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Penn, LLC.*, 2012 WL 5948363 at *2. *See also Bostwick Labs.*, 2013 WL 327055 at *2; *Waite, Schneider, Bayless & Chesley Co., LPA*, 2012 WL 3600106 at *5 (S.D. Ohio Aug. 21, 2012). Indeed, in the business context, courts have found that such a showing requires "specific demonstrations of fact, supported where possible by affidavits and concrete examples." *Waite, Schneider, Bayless & Chesley Co., LPA*, 2012 WL 3600106 at *5. *See also Penn*, LLC, 2012 WL 5948363 at *4; *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 535 (S.D. Ohio Jan. 17, 2014). Finally, courts must balance "the difficulties imposed upon plaintiff against the need to protect information from abuse by competitors." *Arvco Container Corp. v. Weyerhaeuser Co.*, 2009 WL 311125 at *6 (W.D. Mich. Feb. 9, 2009). *See also Bostwick Labs*, 2013 WL 3270355 at *2.

The Court is unwilling to impose an AEO designation on the inspection photographs at issue. The plush toy products pictured in the June 2014 and October 2014 inspection photographs are at the very heart of K&M's copyright infringement claims. Preventing counsel for K&M from sharing and discussing these photographs with their client creates a substantial impediment to K&M's ability to prepare and litigate this claim. Indeed, given the nuances involved in evaluating whether Defendants' toy samples infringe on K&M's products, the Court

-8-

is persuaded that counsel for K&M will require K&M's assistance in order to accurately assess the inspection photographs at issue and the merits of such claim.  Moreover, it strikes the Court as unreasonable to place K&M in a position where it is advised by counsel that Defendants may have infringed on hundreds of K&M's copyrights, but is  not permitted to view photographs of any of these potentially infringing products.

Faced with similar situations, courts have recognized the harm that may be caused by use of the AEO designation, noting that "[d]iscovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant." *Arvco,* 2009 WL 311125 at * 6.  As one court explained:

> [T]his is not a case where the clients have no real, meaningful input to make into tactical decisions, or where their input would not be helpful in determining the bona fides of the information submitted by defendants.  Moreover, . . . plaintiffs should not be put in a position where they are essentially kept in the dark about the important facts of the case.

*Id.* (quoting *DeFazio v. Hollister, Inc.,* 2007 WL 2580633, at *2 (E.D.Cal. Sept.5, 2007)).  Thus, the Court is disinclined to subject the inspection photographs at issue to an AEO designation without Defendants clearly showing "the alleged harm [they] will suffer from any disclosure 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Waite, Schneider, Bayless & Chesley Co., LPA*, 2012 WL 3600106 at * 5.

The Court finds Defendants have failed to carry their burden in this regard.  Defendants insist the 400 toy samples at issue herein reflect Defendants' strategic planning and development efforts and, therefore, photographs of these toys constitute "commercially sensitive information that must not be made available to a competitor, particularly a competitor such as K&M."  (Doc.

No. 76 at 2.)  However, the mere presence of "trade secrets" or "commercially sensitive information" does not automatically entitle Defendants to AEO protection.  *See Penn, LLC*, 2012 WL 5948363 at * 4; *Stout*, 298 F.R.D. at 534.  Rather, the burden remains on Defendants to show that disclosure "will work a clearly defined and serious injury." *Arvco*, 2009 WL 311125 at * 6.

Defendants' only argument in this regard is that K&M has "an acknowledged history of coat-tailing others in the market by purchasing and analyzing their toys, and then determining what K&M would need to do to successfully compete." (Doc. No. 76 at 2.)  They cite deposition testimony of K&M's plush toy designer, Valerie Totire, that K&M would often evaluate competitors' products "to see why consumers like them better; would look at competitors' fabrics, overall design, and appealing likenesses; and would go to trade shows and look at the competition." *Id.*  In light of this testimony, Defendants maintain that K&M "would gain significant commercial advantage by knowing in advance the strategic planning and development efforts of its competitors." *Id.*

The Court finds this argument to be insufficient to warrant AEO protection of the inspection photographs at issue.  Despite Defendants' implication to the contrary, it does not strike the Court as unusual or improper, in and of itself, for K&M to have looked at its competitors' products.  Nor does this fact, standing alone, demonstrate that K&M's access to photographs of Defendants' toy samples will necessarily result in significant competitive harm.  As one court has noted, "vague and conclusory allegations of confidentiality and competitive harm are insufficient." *Arvco*, 2009 WL 311125 at * 8.  Rather, Defendants must come forward with "specific examples" of competitive harm. *Id.*  The Court finds Defendants have failed to

-10-

do so here.

Accordingly, and for all the reasons set forth above, the Court finds an AEO designation is not warranted with respect to the June 2014 and October 2014 inspection photographs.

**III.**     **Conclusion**

For the foregoing reasons, K&M's Motion to Re-Designate Inspection Photographs as "Confidential" (Doc. No. 63) is GRANTED.

IT IS SO ORDERED.


/s/ Greg White_____
U.S. MAGISTRATE JUDGE

Date: February 9, 2015

-11-